STATE OF VERMONT

ENVIRONMENTAL COURT

|                         |   |                                          |
|-------------------------|---|------------------------------------------|
|                         | } |                                          |
| Appeals of Wesco, Inc.  | } | Docket Nos. 17-1-03 Vtec and 107-6-04 Vtec |
|                         | } |                                          |
|                         | } |                                          |

Decision and Order on Pending Motions

Appellant-Applicant Wesco, Inc. appealed from two decisions of the Development Review Board (DRB) of the City of South Burlington, one in January of 2003 and the other in June of 2004, regarding a convenience store with gasoline service at the merged property at 1108-1118 Williston Road. Appellant-Applicant is represented by Marc B. Heath, Esq., William E. Simendinger, Esq. and Kathryn A. Sarvak, Esq.; the City of South Burlington is represented by Amanda S. E. Lafferty, Esq.

Both parties have moved for summary judgment. In addition, the City moved to enlarge time to respond to requests to admit, or, in the alternative, to withdraw and amend the admissions. The City=s motion to enlarge time to respond to Appellant-Applicant=s motion for summary judgment became moot as of the filing of that response.

Procedural Motions

These appeals are the latest litigation regarding Appellant-Applicant=s gasoline station and convenience store at 1108-1118 Williston Road. In Docket No. 17-1-03 Vtec, a proposed site plan providing for three gasoline dispensers was initially put on inactive status in this Court, by agreement of the parties, so that Appellant-Applicant could apply for approval of other alternative proposals for the number of gasoline dispensers, canopies, and other features of the site. After a two-gasoline-dispenser plan had been approved in 2004, and after litigation was anticipated regarding a canopy over the diesel dispenser for that plan, in May of 2004 both matters were scheduled for trial in September of 2004, on a schedule that allowed for Appellant-Applicant=s motion for summary judgment on Question 5 of the Statement of Questions to be filed and decided in the interim.

Appellant served the City with Requests to Admit on August 11, 2004, and with Interrogatories and Requests to Produce on August 30, 2004. The September trial dates were postponed, due to scheduling issues and the fact that the summary judgment motion had not yet been filed. The trial was rescheduled to be held in late November of 2004. However, as of mid-October Appellant-Applicant still had not filed the expected motion for summary judgment, and a conference was scheduled to determine whether the motion would be filed in time for the Court to rule on it before the November trial dates.

At the October 12, 2004, conference, Appellant-Applicant=s attorney stated that Appellant-Applicant had not filed the summary judgment motion as of that date because discovery responses that were due by agreement of the parties that date had not previously been filed, and also that Appellant-Applicant might rely in its motion on admissions due to the City=s failure to answer the pending Requests to Admit.  The City filed its answers both to the Requests to Admit and to the Interrogatories and Requests to Produce the following day.

Appellant-Applicant filed its Motion for Summary Judgment a few days later, including arguments based on the City=s putative admissions.  Within the time for response to that motion, the City filed the present motions related to the Requests to Admit, together with its Cross-Motion for Summary Judgment.

Under V.R.C.P. 6(b)(2), the Court may extend the time for the filing of documents, after the due date of those documents, upon a finding of excusable neglect, similar to the provisions for reopening a case under V.R.C.P. 60(b)(1).

Appellant-Applicant is correct that, in general, mere inadvertence or neglect is not a sufficient basis for granting an after-the-deadline enlargement of time, or the discovery rules would not function.  Rather, the neglect must be >excusable= neglect, that is, not a blatant or reckless disregard of the rules, but a reasonable basis for the inadvertence, mistake or carelessness.  See Miller v. Ladd, 140 Vt. 293, 297 (1981); Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 388 (1993).

In the present case, Appellant-Applicant had filed both a set of Requests to Admit and a set of Interrogatories and Requests to Produce, at different times, and then had agreed to extend the time for some responses.  There is no suggestion that the City acted other than in good faith.  The agreement may have been informal; in any event the parties have not provided any written exchange of letters or emails.  Even if it had been in writing and had specifically mentioned the >Interrogatories and Requests to Produce= rather than some general reference to >discovery responses,= under the circumstances of this case, it was not unreasonable for the City=s attorney to have conflated the two sets of discovery responses, or not to have realized that the parties may have agreed about delayed responses to the other discovery requests but not to the Requests to Admit.  Moreover, the one-month delay in filing the answers to the requests to admit, only two weeks after the other discovery responses were due, and the same day as the stipulated date for at least the other discovery responses, caused no prejudice to Appellee-Applicant[1], and no delay to the proceedings, as the other discovery responses were necessary, in any event, before Appellee-Applicant could file its motion for summary judgment.

Moreover, as the effect of the admissions would be to result in judgment for Appellant-Applicant without a hearing on the merits, the principles applicable to opening or setting aside a default judgment are instructive.  Not only is a default judgment disfavored as compared with a

decision on the merits, <u>Brady v. Brauer</u>, 148 Vt. 40, 44 (1987), but trial courts Ashould generally reopen >absent culpable negligence or deliberate purpose to delay.=@  <u>Courtyard Partners v. Tanner</u>, 157 Vt. 638, 638 (1991) (internal citation omitted).  See also <u>Desjarlais v. Gilman</u>, 143 Vt. 154, 158-59 (1983) (rules on reopening default should be construed liberally  in favor of Athe desirability of resolving litigation on the merits@).

Accordingly, the City=s motion is hereby granted to allow the late filing of its responses to the requests to admit.  Its alternative motion to amend its admissions is denied as moot.  We proceed to consider the summary judgment motions on their merits, as if the answers to the requests to admit had been timely filed.

Cross-Motions for Summary Judgment

The following facts are undisputed unless otherwise noted.  Appellant-Applicant owns a merged 40,440-square-foot (0.93-acre) parcel of property on the northerly side of Williston Road near its intersection with Dorset Street, in the Commercial 1 zoning district and Traffic Overlay Zone 2.  The property and project was fully described in the June 24, 2002 decision in Docket Nos. 65-3-00 Vtec and 66-3-00 Vtec; those descriptions are repeated here only as necessary to clarify the present decision.

Prior to its conversion to a convenience store with gasoline service, the property contained a building housing a three-bay repair garage, as well as gasoline dispensers on two islands in front of the building and a diesel dispenser at the southeast corner of the building.  Its conversion to a convenience store with gasoline service required both conditional use approval and site plan approval.

The front canopy on this property was approved in 1986 and is not at issue in either of the present appeals.  In 1999 the DRB had granted conditional use approval of an earlier proposal for this property, for a convenience store with three gasoline dispensers (each with two fueling positions) in front of the building, the single diesel dispenser at the southeast corner of the building, and a particular lighting plan.  This 1999 three-dispenser conditional use approval was not appealed and became final.

Two appeals were taken to this Court in 2000 regarding this property (Docket Nos. 65-3-00 Vtec and 66-3-00 Vtec), addressing two alternative site plan applications, both of which proposed the single diesel dispenser at the southeast corner of the building and to reduce the existing gasoline station curb cuts to 36 feet in width.  Docket No. 65-3-00 Vtec was the Applicant=s appeal from the denial of site plan approval for the convenience store with three gasoline dispensers on the two existing islands in front of the building.  Docket No. 66-3-00 Vtec was the Applicant=s appeal from the denial of site plan approval and the denial of conditional use approval for the same convenience store with two gasoline dispensers, one on each of the two existing islands in front of the building.

In its June 24, 2002 decision, the Court first ruled that, because the 1999 three-dispenser proposal had become final and could not be appealed, either directly or indirectly, the conditional use approval of the two-dispenser proposal could be considered and ruled on only to the extent that it differed from the unappealed 1999 three-dispenser conditional use approval. The Court determined that the two-dispenser plan did not differ from the unappealed 1999 three-dispenser plan as to any of the conditional use approval criteria. Those criteria include analysis of the lighting plan under the performance standards for direct and indirect glare. However, the 2002 decision ruled that the lighting could be reviewed under the site plan criteria as to the adequacy of landscaping and screening with respect to the illumination of neighboring property.

On the merits of both 2000 applications for site plan approval, the Court=s 2002 decision approved the lighting plan as to the adequacy of screening and landscaping, and imposed conditions relating to the fixture in the northeastern corner. (We note, however, that as that decision did not address any question of lighting at or around a canopy to the west of the building, as none was then proposed). On the merits of both 2000 applications for site plan approval, the Court=s 2002 decision also approved both site plans as to the traffic overlay criteria, analyzing the traffic overlay criteria at great length, but did not approve them as to vehicular and pedestrian access and on-site circulation. No party appealed the Court=s 2002 decision, and it became final as to the approval of the lighting plan, and became final as to the traffic overlay district requirements. That ruling was specifically without prejudice to submittal to the DRB of changed plans to address the access and circulation problems.

Appellant-Applicant then redesigned its site plans to address the issues with access and on-site circulation. Both redesigned site plans moved the diesel dispenser to an area to the west of the building, and moved two of the gasoline dispensers to a single central island in front of the building. The redesigned two-dispenser plan proposed to place the diesel dispenser under a 24' x 24' canopy with four 175-watt metal halide lights. The redesigned three-dispenser plan proposed to place the third gasoline dispenser to the west of the building on the same island as the diesel dispenser, with both dispensers under a 24' x 32' canopy with six 250[2]-watt metal halide lights.

In January of 2003, the DRB denied the application for site plan approval for the redesigned three-dispenser plan, giving as reasons: lack of compliance with the traffic overlay district requirements, unsafe access conditions due to an increase in the number of turning movements in a high-traffic-volume area, and failure to show that the application would meet the performance standards for direct and indirect glare. Docket No. 17-1-03 Vtec is the appeal to this Court of that decision[3].

In December of 2003, the DRB granted site plan approval for the redesigned two-dispenser plan. No party appealed, and that decision became final. The redesigned two-

dispenser plan had moved the diesel dispenser to an area to the west of the building, with a 24' x 24' canopy (and its associated lighting) over the diesel dispenser area.

In early 2004, Appellant-Applicant submitted an application for a zoning permit to allow construction of the redesigned 2-dispenser plan. The application form was filled out as follows under the category of Aproposed structures/improvements.@ In one handwriting it is filled in as A2056 square feet building, 2 canopies, 2 gasoline pumps and one diesel pump.@ The strikeout line through the phrase >2 canopies,= the initials ADS@ above that strikeout line, and the additional words: ANo New Canopy[,] Attached site plan that was approved[,] 2 x 57 Addition, Convert to Store[,] 12 seats, Deli,@ are written with a finer pen line that appears to be the same as the signature on the same document for the president of Wesco, Inc., David Simendinger. The zoning permit was granted on January 20, 2004, without the canopy, and was not appealed. The circumstances under which Appellant-Applicant went forward to obtain the zoning permit for the two-dispenser plan without the canopy over the diesel dispenser are not at issue in the present appeal. What is undisputed is that, for whatever reason, Appellant-Applicant did not appeal the grant of that permit due to the lack of the diesel canopy approval.

Rather, Appellant-Applicant went forward with construction of the two-dispenser plan, without the diesel canopy, and applied instead on February 18, 2004, for a zoning permit for the 24' x 24' diesel canopy. It was denied on March 19, 2004, on the basis that Athe use of the proposed second canopy, service station, is neither a permitted nor a conditional use in the C1 zoning district in which the subject property is located,@ under the Land Development Regulations in effect as of the February 2004 application. The DRB upheld this denial; the appeal of that action is Docket No. 107-6-04 Vtec.

The differences between the as-built two-dispenser plan, without the canopy, and the three-dispenser plan at issue in Docket No. 17-1-03 Vtec, are as follows. The three-dispenser plan proposes an additional gasoline dispenser, to be located at the diesel island to the west of the building. The three-dispenser plan proposes a 24' x 32' canopy with six 250-watt metal halide bulbs over the island to the west of the building. The three-dispenser plan proposes 24 parking spaces rather than 20; eliminating two small landscaped areas (each with a honey locust tree) projecting into each parking area and shortening a curbed area bordering the east side of the easterly curb cut. The three-dispenser plan proposes to increase the as-built 32-foot width of the two curb cuts to the prior width of 402 feet for the westerly curb cut and 40 feet for the easterly curb cut, and to eliminate a curbed and landscaped area between the two curb cuts. The three-dispenser plan also proposes to eliminate the yew hedge west of the westerly curb cut and to alter the configuration of trees to be planted in the southwesterly area of the property.


Docket No 17-1-03

Certain aspects of the three-dispenser site plan are unchanged from those in the three-dispenser site plan considered in this Court=s decision in <u>Appeals of Wesco, Inc.</u>, Docket Nos. 66-3-00 Vtec and 65-3-00 Vtec (Vt. Envtl. Ct., June 24, 2002).

In that decision the Court analyzed the three-dispenser proposal with respect to the Traffic Overlay District criteria, and concluded that it met the criteria, because site improvements will produce a net benefit for traffic flow in the vicinity compensating for the anticipated increase in traffic generation between the former gasoline service station use and the three-dispenser proposal. The doctrine of collateral estoppel (issue preclusion) operates to prohibit the litigants from relitigating a factual or legal issue actually litigated and decided an earlier action. The compliance of the three-dispenser proposal with the Traffic Overlay Criteria with respect to the analysis of traffic generation and the analysis of >net benefit for traffic flow in the vicinity= cannot be relitigated.

By contrast, issues of access and on-site circulation are before the Court in this appeal <u>de</u> <u>novo</u>, to the extent that they differ from the approved and built two-dispenser plan, including any differences in the use of the site caused by the projected additional vehicles to be generated by the additional gasoline dispenser. We expect the parties to present evidence on the effects, if any, of the wider curb cuts, the reduced landscaping, the proposed west canopy structure and its lighting, the additional traffic generated by the third gasoline dispenser, and the shared use and circulation at the diesel-and-gasoline island on the adequacy of access and on-site circulation.

Similarly, to the extent that the lighting plan now proposed for the three-dispenser proposal is the same as that at issue in the 2002 decision, it cannot be relitigated. And to the extent it is the same as the lighting plan for the approved and built two-dispenser plan, it cannot be indirectly challenged in this proceeding. However, the three-dispenser plan at issue in the present case proposes a 24' x 32' canopy with six metal halide lights over the combined diesel and gasoline island, that was not approved in any prior plan. The merits of that canopy and its lighting may be considered by the Court in this appeal.

In addition, any differences in the proposed landscaping between the current three-dispenser plan and the as-built two-dispenser plan may be analyzed with respect to the adequacy of landscaping and screening, both with respect to the proposed canopy and otherwise.

<u>Docket No. 107-6-04</u>

Appellant also appeals the denial of a zoning permit for a 24' x 24' canopy over the diesel fuel dispenser on the westerly side of the convenience store, with respect to the approved and constructed two-dispenser plan.

The canopy at issue in this appeal was approved in the December 2003 site plan for the two-dispenser plan. The gasoline station use for this property existed prior to the change in

regulations that made them no longer allowed uses in this zoning district. The 1999 approval of the conversion of this property from a gasoline service station to a gasoline station with convenience store also occurred prior to the change in regulations. Compare Land Development Regulations (effective date May 12, 2003), '5.01, Table C-1, at 4, with Zoning Regulations (last amended July 9, 2002), ''12.106, 12.213.

Thus, depending on when the change of regulations were <u>proposed</u> for public comment, as of the March 2004 application for the 24' x 24' canopy, the diesel island was an approved use, but one that may have become subject to the regulations for expansions of structures housing existing, non-complying uses.

A canopy over a fuel service island meets the definition of accessory structure in the Land Development Regulations. '2.02. The proposed canopy over the approved diesel fuel service use is a structure that is detached from the principal building on the same lot. It is customarily incidental and subordinate to the principal use of the property as a Agas station with convenience store.@

If the diesel island or the proposed canopy had violated a setback or other dimensional requirement of the Land Development Regulations, then the placement of a canopy over that island could have been denied as an expansion of a previously approved but now non-conforming structure. '311. However, it does not appear to violate any dimensional requirements of the regulations. It was denied, despite the facts that the gas-station-with-convenience-store use was previously approved and that the canopy was previously granted site plan approval, simply because a gas-station-with-convenience-store use had become nonconforming in this district.

It is useful to compare the present case to that presented in <u>In re Appeal of Pearl Street Mobil</u>, Docket No. 2001-249 (Vt. Sup. Ct., Dec. 21, 2001) (three-justice panel), in which a canopy was allowed to be placed over pre-existing, non-conforming gasoline pump islands, because the canopy would not enlarge or affect the nonconforming use. In the present case, the installation of the 24' x 24' canopy over the diesel pump island does not violate any of the setback or other dimensional requirements for the C1 District, see Regulations tbl. C-2, at 281, and does not create or expand the previously-approved but now-nonconforming use on Appellant-Applicant=s lot, which remains an approved gas station with convenience store. Because the canopy will be constructed over existing fuel dispensers, because it will not violate any area restrictions, because it has been approved under the site plan standards, and because the use of the property will remain the same, the canopy will not enlarge a non-conforming use. <u>Cf.</u>, <u>In re Pearl Street Mobil</u>, Docket No. 2001-249, slip op. at 3.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED as follows:

The City=s motion to allow the late filing of its responses to the requests to admit is GRANTED. The City=s motion in the alternative to amend its admissions is DENIED as moot.

In Docket No. 17-1-03 Vtec, Appellant-Applicant=s Motion for Summary Judgment is GRANTED in PART, in that issues as to the Traffic Overlay District Criteria are not before the Court in this appeal, and issues as to the performance standards for direct and indirect glare are only before the Court in this appeal as they pertain to the canopy over the proposed combined diesel and gasoline island to the west of the building, and is otherwise DENIED. The City=s Cross-Motion for Summary Judgment, seeking dismissal of the application as moot, is DENIED.

In Docket No. 107-6-04 Vtec, Appellant-Applicant=s Motion for Summary Judgment is GRANTED and the City=s Motion for Summary Judgment is DENIED.

This decision concludes Docket No. 107-6-04 Vtec. We will schedule a telephone conference to discuss the issues remaining for the merits hearing in Docket No. 17-1-03 Vtec and the amount of time that should be scheduled for them. The parties should be prepared to discuss the possibility of mediation of any of those remaining issues.

Dated at Berlin, Vermont, this 10th day of June, 2005.

_____
Merideth Wright
Environmental Judge

---

[1] The fact that Appellant-Applicant then had to present its case on its merits, rather than based on the putative admissions of the City, should not be considered prejudice, as the law favors the disposition of disputes on their merits, if possible, whether through summary judgment or an evidentiary hearing, as appropriate. This is not an instance of reopening a case after judgment, see, e.g., Altman v. Altman, 169 Vt. 562, 586 (1999), nor is it a case in which a party asks to be relieved of the consequences of a Atactical decision[] which in retrospect may seem ill advised.@ E.g., Okemo Mountain, Inc. v. Okemo Trailside Condominiums, Inc., 139 Vt. 433, 436 (1981); Rule v. Tobin, 168 Vt. 166, 174 (1998).